FRANKLIN v. GLEN ROSE GASOLINE
CO., Inc., et al.

No. 5805.

Court of Appeal of Louisiana.
Second Circuit.

March 31, 1939.

Fred L. Jackson, of Homer, for appellant.

Meadors & Gensler, of Homer, for appellees.

Mabry & Carstarphen, of Shreveport, for appellant.

Blanchard, Goldstein, Walker & O'Quin and Ben C. Dawkins, Jr., all of Shreveport, for appellees.

HAMITER, Judge.

The provisions of the Louisiana Employers' Liability Act (Act No. 20 of 1914) are invoked by plaintiff in this suit. He alleges that on October 24, 1936, while discharging his duties as an employee of the Glen Rose Gasoline Company, Inc., he experienced an accident which resulted in injuries to his right hip, leg and ankle and to the lower portion of his back, and rendered him totally and permanently disabled to do work of any kind. The prayer is for a solidary judgment against said employer and its compensation insurer awarding him compensation of $19.50 per week for a period of 400 weeks.

Defendants admit the alleged employment, but they deny that he sustained any accident, injuries or disability.

Plaintiff's demands were rejected and his suit dismissed by the trial court. He appealed.

The controversy presents only issues of fact. Our careful and thorough study of all of the testimony and other evidence in the voluminous record of the proceedings has not furnished the conviction that manifest error was committed by the trial judge.

Plaintiff testifies that he commenced work for the defendant employer on August 9, 1936. The claimed accident occurred about ten o'clock, on Saturday night, October 24, 1936. No other person witnessed it. He was engaged at the time in loading gasoline into a tank railroad car. Certain vibrating pumps then being used necessitated his climbing onto the car, so he "reached up with my right hand and caught hold of the side of the tank of the car and put my right foot on the step and left foot on the ground and as I raised up my right foot slipped and that threw me around and my right side hit the side of the platform of the car." He further explains: "When my right foot slipped it jerked me and I swung around the end of the car and struck the lower part of my hip against a two by twelve." He continued working until six o'clock the following morning.

On Tuesday, October 27, 1936, he reported the accident and resumed his employment, and thereafter worked continuously until November 2, 1936. During this period he visited Dr. H. W. Mann at Rodessa, Louisiana, on three occasions. Regarding one of these visits, the mentioned physician states:

"I examined Mr. Franklin thoroughly only the one time, and as the symptoms complained of were all relative to the left hip, my examination was confined to that area and to the lower back. There were no objective signs of any injury, pain or pressure was complained of over a small area around the articulation of the leg with the hip, and to some extent over the lower back. There was no muscle rigidity or stiffness anywhere in this area, nor were there any bruises nor abrasions. I came to the conclusion that his injuries, if any, were of very minor nature, and that any pain or discomfort he might be having should clear up within a very short time. He submitted to examination willingly and was fairly cooperative, though he disliked to move his leg or his hip to any great extent, saying that to do so brought pain."

Later his employer's superintendent sent plaintiff to Shreveport to receive osteopathic treatments. One treatment was given him each day during a six-day period.

Subsequently, he was taken by a company official to a well known sanitarium in Shreveport where he was examined, X-rayed, treated and kept under observation. After being there for nine days he was discharged. The attending physicians found nothing that could cause the disability and suffering complained of by the patient.

Following the hospitalization, he was examined, treated and observed by numerous other physicians, and X-rayed by several radiologists. Some of these reached definite conclusions that he had sustained and was suffering traumatic injuries, while others were equally as positive that he was normal in every respect. Among the latter group were three appointed by the district court on application made by the defendants.

It is to be observed from the foregoing that the expert proof, which was furnished by fifteen members of the medical profession, is hopelessly and irreconcilably conflicting. Situations of this kind are not now unusual. They have occurred frequently in recent years in causes involving physical injuries. However, they are certainly not relished by the judicial tribunals, because much confusion and little assistance result therefrom, and the task of administering justice is made difficult thereby.

In some cases where similar conditions existed the courts have disregarded the medical proof and based their decisions on the lay testimony. Hennen v. Louisiana Highway Comm., La.App., 178 So. 654; Bearman v. Fuller Construction Co., La. App., 148 So. 720; Rogers v. Union Indemnity Co., La.App., 146 So. 505.

Even should the last mentioned course be followed in the instant case, a reversal of the judgment by us would not be warranted, in view of certain unfavorable circumstances that the record discloses.

On October 20, 1936, or four days before the occurrence of the claimed accident, plaintiff made application to the United Benefit Life Insurance Company of Omaha, Nebraska, for sick and accident insurance. The desired policy was for the principal amount of $1000, and provided weekly benefits of $25 in the event of disability from sickness or accident. Delivery of the policy was made to him on November 5, 1936, or subsequent to the accident date, while he was undergoing treatments. In connection with the delivery he signed a statement acknowledging receipt of the policy and certifying "that at this date I am in good health". When questioned about the document during the trial he first denied having signed it and stated that he had never seen it before. Later, he said that he did not remember if it was either executed by or read to him. During the lat-

ter part of November, 1936, or approximately three weeks after the policy was received, he filed a claim for the insurance benefits provided by the contract, this being based on the alleged accident involved in this proceeding. Payment of the benefits was refused, and up to the date of trial of this case, which was March 22, 1938, he had not filed suit to recover therefor.

Another of the referred to circumstances pertained to a professional visit made by the aforementioned Dr. Mann. This is better described by quoting from the deposition given by that physician:

"Direct Interrogatory No. 9:

"Did you ever have occasion to visit Virdo Edward Franklin professionally at his home in Zylks, Louisiana? If you have answered yes, please describe this visit, including your observations and findings as to his condition of health at the time."

"In answer to Interrogatory No. 9 witness says: Some two or three months after the accident I was called to visit V. E. Franklin professionally at his home in Zylks, Louisiana. I am by no means positive of the date of this visit other than that it was after the accident. On my arrival I was informed by a woman there present that he had been unconscious for several hours and that they had been absolutely unable to arouse him. I made a partial examination and came to the conclusion that the unconsciousness was feigned, and in order to decide this matter I jabbed him lightly with the point of a pocket nail file, whereupon he sat suddenly up in bed and wanted to know what I did that for. Deciding that if this very minor pain could arouse him from a supposedly deep coma he was in, I concluded that the unconsciousness was not real but pretended and left him."

The occurrence of the last related incident is denied by plaintiff, his wife and a friend, although they admit that the visit of the physician was made and state that plaintiff was unaware of his presence there. However, no reason is assigned or disclosed for Dr. Mann's making a statement of that character if it was not true. Then, too, it seems unusual that a state of unconsciousness could result to a person from a blow on the hip as plaintiff described.

There are many other circumstances revealed by the record that do not lend assistance to the success of plaintiff's case, but on the contrary operate as a hindrance thereto. We deem it unnecessary to mention these.

As before stated, we are unable to say that the trial judge has manifestly erred in his decision, and it will not be disturbed.

The judgment is affirmed.